Our next and final case this morning is Matthew Shealey versus the Secretary of Veterans Affairs, Mr. Carpenter. May it please the court, Kenneth Carpenter. I appear on behalf of the interveners in this matter, attorneys Gentile and Hoffman. Mr. Shealey is the original applicant or excuse me, appellant in the proceedings. The issue before this court is whether or not the interveners as the former attorneys. Is your contention, Mr. Carpenter, that the retention agreement here effectively assigned the legal fees to counsel? Yes. It doesn't say that expressly. No, it does not use the term assignment. It uses terms relative to the cooperation of the appellant. Just to clarify, are you saying that the agreement, the fee agreement, assigned the right to seek the statutory EJA fees over to the attorneys to file the EJA application in court? In the context of this case, yes, Your Honor, and that was because of the decision by Mr. Shealey that he would not proceed, which effectively... Okay, okay, that's different. I'm sorry. It sounds like, as I understood your argument, it was in your briefing, it was because Mr. Shealey elected not to pursue his statutory right to EJA fees, then under the contract, in your view, the counsel were permitted to then file those EJA fee applications on Mr. Shealey's behalf? That is correct. Okay, as I understood Judge Dyke's question, his question was, did that fee agreement between counsel and Mr. Shealey assign the right that Mr. Shealey possesses by statute over to his counsel for his counsel to be able to file the EJA fee application because now they have the statutory right that was initially and always assigned, given, conferred to Mr. Shealey? To Mr. Shealey as a party, that's correct, Your Honor, and to the extent that I responded in the affirmative, then I did not intend to go that far. However, I believe that the practical effect is the answer that I gave to Judge Dyke, is that the practical effect is that there is an assignment of the right to proceed to those fees because all that is recovered under the EJA statute are those fees and expenses incurred by every attorney-client relationship in proceedings before the Veterans Court. And the Veterans Court, by statute, requires the attorney to file the fee agreement and the fee agreement is filed with the court and that establishes the status of the attorneys as a party at interest in the proceedings under EJA. Now, the proceedings under EJA only come at the end of the litigation and they are predicated by meeting certain statutory requirements that there is a prevailing party and that the government's position is not substantially justified and the fees sought are reasonable. The question in this case is merely standing. Do these former attorneys, as a result of their fee agreement with the appellant, have the legal standing to participate, even to the extent of filing the application, to recover the fees for the services that they provided to the appellant before Mr. Sheely chose to terminate their services? And the counselor is seeking to file for those fees. Is that how I understood your argument in your grave brief? Yes, Your Honor. The problem here is that we're dealing with a legal... If that were the case, then you're foreclosed by Willis. Because Willis says they don't, the attorneys don't have prudential standing to seek the fees on behalf of the client. Distinguishing Kaplan and Drysdale, which nobody bothers to discuss but you probably should have. I think you're dead on that theory. The distinction that exists in this case is the right to initiate those proceedings. And the right to initiate those proceedings flows from the fee agreement. It does not... But it could only flow from the fee agreement if the were an assignment, you would run into problems under the Anti-Assignment Act that you'd have to show that the government acquiesced in the assignment, which it very much doesn't look as though they've done here. But they didn't acquiesce in any assignment. No, no, they did not, Your Honor. However, these are the statutory rules under which attorneys operate within the confines of Title 38. And Title 38 requires the filing of a fee agreement so that the court and the parties, including the government, are on notice of what the relationship is. And the relationship under the terms of this contract provided, required the assistance of Mr. Shealy in filing that application. And that application is Is there a factual distinction between the case you have here and what happened in Willis? Because... I believe there is, Your Honor. I didn't see any discussion in your briefs about Willis, particularly this prudential standing defect that existed in Willis. The factual distinction here is that this case is about standing. And how standing does or does not arise... That wasn't the issue in Willis? I thought it was. I thought Willis said there's no Article 3 standing and likewise in the alternative there's no prudential standing. That's correct, Your Honor. Okay. So what's the daylight, if any, between the facts of Willis and the facts here that could assist you in saying, well, Willis cannot control? Because the holding in Willis goes to whose fees those are. And the interveners are not making an assertion that those fees are theirs until such time as the application is decided. And at the time in which the application is decided, they have both a contractual and an equitable interest in the fees that are granted. In Willis, the attorney there didn't have a contractual or equitable interest in the fees in the same way that the counsel here do? I don't believe so, Your Honor, because I don't believe there was a requirement in Willis for the filing of the fee agreement that put all parties, including the government, on notice of what the legal relationship was pursuant to that fee agreement. In this fee agreement, the interveners agreed to represent at no charge to the veteran. They complied with that and provided those services until such time as Mr. Sheely decided that he did not want their representation anymore. At that juncture, they had an interest in the work that had been performed in the event that he succeeded. Are you saying they had an interest in the fee or are you saying that they acquired an interest in pursuing the fee on behalf of the client? The latter, Your Honor. I'm sorry if I inaccurately spoke. That's what I meant to say. What's the work that the counsel did here? It seemed like it was a pretty short period of time and it next counsel that was representing Mr. Sheely that succeeded in getting the joint remand. That would be incorrect, Your Honor. The work that they did is required in order to participate in the pre-briefing conference that was held in this matter. In order to prepare for that pre-briefing conference, counsel for the appellant is required to prepare a memorandum of the issues that were at stake in the proceeding or the appeal that was being presented. In order to do that, counsel needed to review the record on appeal, the proceedings before the agency, and prepare a memorandum. It was on the basis of that memorandum that this matter was, from the government's point of view, prepared to be resolved. So everything was done except that Mr. Sheely would not agree to the joint motion for remand. The subsequent counsel apparently persuaded Mr. Sheely that that was the correct way to proceed and she did not either file an application for fees because I presume she's in a nonprofit situation in which their job is to work with other lawyers to act in the capacity of representing the You have plenty of rebuttal time. Apparently you wish to save it. I would like to. Thank you. Mr. Kurland. Good morning, your honors, and may it please the court. Any way you cut it in this case, what the appellants are asking for is to be able to file an EJA application in their former client, Mr. Sheely's name, over his objection. You admit that EJA fees are out, right? The VA below did not contest the merits of the EJA application. I don't think VA got into the amount that was claimed. I the fact that VA did not contest that below, it's obviously not VA's right to determine whether Mr. Sheely objects or not to the application. But in terms of the prevailing party status, so on and so forth, I think there's a lot of damage to one aspect of the appellant's arguments that your honors didn't get into in the opening remarks, which is this idea that to the extent what they really have here is a potential breach of contract action that that wouldn't be prosecutable in state court. We are aware of no reason why. Yeah, I think they would have a breach of contract action against the client for failing to pursue the fees, so put that aside. But let me ask you a hypothetical. Suppose, contrary to Mr. Carpenter's position here, we had a fee agreement which provided for an actual assignment of the legal fees from the client to the attorneys. I guess my questions are, one, would that give the attorneys standing to pursue the fees? And two, would that, would the government acquiesce in such an arrangement under the Anti-Assignment Act? Sure, your honor. Just to put the nail in the coffin to make sure we're clear about what our understanding is that the appellants are or are not arguing, I should point out as an initial matter that at page 3 of the Veterans Court's decision, page 3, footnote 3, the Veterans Court explicitly articulated its understanding that the appellants were not arguing that there was an assignment. And he said that this morning, they're not arguing. On the issue of whether that would change anything, that's an issue that the Seventh Circuit addressed in its Harrington v. Berryhill decision that we cited in our briefs. Harrington v. Berryhill is a decision that came out after the Supreme Court's more general decision in Ratliff that said that these rights belong to the litigant and not to the attorneys. The Seventh Circuit in Harrington took on the question of whether the fact that there was an assignment in that case changed the analysis at all, and it determined that it did not. So although it's always difficult for us to speculate about issues that are not before the court, at least one sister circuit of this court has come to the conclusion that it didn't change the situation. The Second Circuit, the Seventh Circuit, excuse me, concluded that any assignment didn't overcome the language of the statute, which, you know, the clear language says prevailing party and makes it the property, these fee applications, the right and property of the prevailing party. I think it just said there may be an assignment here, but we don't think that changes the analysis. It went through a very similar analysis. If there had been an assignment, would the government acquiesce in that under the Anti-Assignment Act? Unfortunately, Your Honor, I can't speculate. It's not an issue that we've discussed with VA that I would know the answer to. But I do think there is a twofold problem with the nature of the claim that is before the court, which is this idea that the fee agreement creates a derivative or ancillary right to seek fees on behalf of the former client. Third party standing. I mean, it's not, it wouldn't be a frivolous contention under Kaplan and Drysdale. You're familiar with that, right? I'm familiar with the court's decision in Willis and its discussion of Kaplan and Drysdale in that case. There is one minor distinction between this case and Willis that is relevant to the outcome here and, if anything, helps us. But it makes the prudential standing issue, I think, less relevant here as compared to the constitutional and statutory standing issues that we've raised. One distinction in Willis was that the party in that case had both sought some of the fees that her former counsel had incurred and also refused to seek some of the fees that the former counsel incurred. The court's description was that she termed some of the fees excessive. My reading of the court's decision on prudential standing relates to the portion of the claim, I'm sorry, one other important fact there is that both the client and her former attorneys appealed up through the MSPB board but then only the attorneys came here to the Federal Circuit. So the client had effectively given up. And I think that's where the prudential standing issue arose. It was for the portion of the claim where the client had claimed the fees and then refused to continue and the attorney was then on her own in also claiming the fees. And the court said there may be, to the extent that the attorney is claiming fees that the client supports, that may be sufficient for constitutional standing but it doesn't satisfy prudential standing. We certainly would agree that, and indicated in our brief, that for the same reasons that the attorneys didn't satisfy prudential standing in Willis, the attorneys here don't satisfy prudential standing under the Kaplan and Drysdale test. We don't think the court needs to go that far here. It seems like it's really a matter of statutory standing. All of the authorities on this issue in various ways including instances where parties have either waived in settlement agreements or otherwise not supported their attorneys move for fees, the courts have all said this is a right under the plain language of EJA that belongs to the litigant and not the attorneys. Yeah, yeah, but the theory under Kaplan and Dysdale is that the counselor is suing on behalf of the client and that's where the prudential standing problem comes in. They would seem to have Article III standing and that they under Kaplan and Drysdale because they have an interest in fee recovery. Your Honor, I think again that it is both part of the analysis but also a basic assumption of what was going on in Willis and hence Kaplan and Drysdale that the parties were aligned in that sense. In Willis, the had sought these fees and the court had cut the fees back and she had given up and the attorney said no, no, no, I want my full fees and hence they were aligned. There might be constitutional standing because the attorney was again just asserting the right of the former client that the former client wanted to assert. The difference here is that Mr. Shaley does not in any way, shape, or form and objected I think four times below to any type of pursuit of fees by the that makes this both different from Willis and Kaplan and Drysdale but even if one were to apply the analysis as this court discussed in Willis, part of the analysis for prudential standing is the idea that the attorney and the client are aligned. Obviously in that case you have some of the special circumstances of criminal forfeiture. Here we believe there's a simpler answer which is that the court can as we indicated in our briefs can reach statutory standing before reaches article 3 constitutional standing and here it's a matter of statute but these attorneys are not the folks who Congress intended to make liable. That argument seems to run into Willis. I mean neither one of you likes Willis here but I don't think that's open to you under Willis. Well we do like Willis, your honor. We just think that that argument that the claim here implicates the first part of Willis that said to the extent the attorney in Willis was seeking fees that the client former client did not support that that attorney lacked standing and that's what's going on here but again we certainly agree that prudential standing is lacking here under Willis. The key fact and this is something that Willis discussed at 1344 of Willis alluding back to the Supreme Court's decision in War Three Selden explained that standing often turns on the nature and source of a claim asserted. So taking that to heart one can look for example at the appellant's reply brief. I don't think there's any way to get around despite some different statements that the plaintiffs I'm sorry the appellants locate the source of the right that they're claiming not in the aegis statute itself but in their fee agreement with Mr. Shaley or some combination of the two. It's repeated to tick off a non-exclusive list it's at pages 2 to 3, 4, 5, 6, I'm sorry 6, 8 to 9, 11, 12 to 13, 13, and 22. Page 6 is a particular example where the plaintiffs appellants argue that it is the terms of the agreement on which they rely for standing and that's what the veterans court below recognized the nature and the source of the right here is really the contract. That's why the veterans court recognized that this is effectively a common law breach of contract claim and that that remedy is open to the plaintiffs and frankly has been throughout this period in which they've sought to litigate this issue. They haven't pursued that remedy. That's how they should proceed. You say they haven't pursued it. Well I should say to our knowledge that they haven't pursued it. I suppose counsel could correct me if I got that wrong. That's pretty unrealistic that someone former counsel would sue the veteran for breach of contract for failing to apply for the aegis. I say it's pretty unrealistic to think that lawyers are going to sue the former client for the fees. Well you know it's not our role to step in. I think a consistent thread through the jurisprudence on these issues including some of the some of what the Supreme Court said in Ratliff and a number of the other cases that are adjacent is it is really not it's really not our business to be getting into that type of dispute. That's something for the client and the attorney to work out as part of their contractual relationship not part of each. Anything further counsel? No your honors. We request that the court affirm the decision below. Thank you. Mr. Coplander has some rebuttal time. Thank you. I'd like to go back to Willis and the distinctions between the factual situation there and the factual situation here. In Willis it was a proceeding that was underway with the agreement of the party that Willis or excuse me that the appellant in Willis agreed with counsel to proceed under aegis. This case is at the starting gate. Willis was after there was a decision on the merits of the aegis application. There has been no decision on the merits of the aegis application. This puts these intervenors in a position in which as opposed to being able to rely upon the contract that they were required to submit to the court to not be able to utilize that contract in order to ensure that there is an aegis application. Now what happens after the result of the aegis application is frankly a matter for another day. But the aegis statute is the mechanism in which there is a determination as to what the value of the services were that were performed. And those services were only performed under the auspices of aegis. And respectfully your honor I don't believe that there is a state court that would be able to address whether or not the parties were or were not entitled to a fee under aegis. So it seems to me that the distinction here merits at least the prudential standing to get this initiated and make a determination. The result of that determination would be that Mr. Scheele would be entitled to that fee. We do not dispute that Mr. Scheele is the owner of that fee. Now what happens after there is a judgment and whether or not he does or does not then a matter that is subject for jurisdiction within the state courts. Unless there are further questions I have nothing for it. Thank you counsel the case is submitted.